

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

Washington, DC 20226
www.atf.gov

# CERTIFICATION

1. I, James D. Ingram, hereby certify that I am Associate Chief Counsel, Asset Forfeiture Division, Office of Chief Counsel, in the headquarters office of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), within the United States Department of Justice. I also serve as a supervisory official of ATF's Asset Forfeiture and Seized Property Division (AFSPD). In the course of my duties in this position, I provide legal advice and guidance on asset forfeiture matters to ATF executive management and AFSPD.

2. The personnel assigned to AFSPD, both at ATF Headquarters located in Washington, DC, and in ATF's twenty-five field divisions located across the United States, are responsible for the daily operation of ATF's administrative forfeiture program. This work includes the identification of specific assets and any potential interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of any contested matters to U.S. Attorney's Offices across the country for their consideration. Since the beginning of FY 2019 through the date of this certification, ATF has initiated administrative forfeiture actions against more than 37,600 assets.

3. For every ATF administrative forfeiture action governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), AFSPD is required to send written notice to all

interested parties by the deadlines established in 18 U.S.C. § 983(a)(1)(A); to-wit: 60-days for federal seizures and 90-days for adopted seizures (those initially made by a state or local law enforcement agency). 18 U.S.C. § 983(a)(1)(A)(i), (iv); 28 CFR § 8.9(c)(1).

4. As designated by 28 C.F.R. § 8.9(c)(7), I am the appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including, *inter alia*, endangering the life or physical safety of an individual, or seriously jeopardizing an investigation. 18 U.S.C. §§ 983(a)(1)(B) and (C).

5. On March 13, 2020, President Trump declared a national emergency, effective as of March 1, 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on March 15, 2020, the Attorney General implemented a "maximum telework" policy, which includes all DOJ law enforcement components. As a result, virtually all asset forfeiture personnel working in ATF Headquarters in Washington, DC, and ATF's twenty-five field division offices are teleworking.

6. As the COVID-19 disease continues to spread, it is becoming increasingly difficult, and soon may be impossible, for ATF to comply with the guidance promulgated by the Centers for Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.

7. Based on the foregoing, I have reason to believe that sending notice of pending administrative forfeiture actions, processing claims, and making referrals at this time may, in fact, endanger the life or physical safety of numerous ATF AFSPD personnel, or otherwise jeopardize ongoing ATF investigations. Accordingly, I believe that a sixty (60) day extension of all noticing deadlines and filing deadlines in these cases is necessary and appropriate to protect the health and safety of ATF personnel who are responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 30th day of March, 2020 at Washington, DC.

James D. Ingram

JAMES D. INGRAM
Associate Chief Counsel, Asset Forfeiture Division
Bureau of Alcohol, Tobacco, Firearms and Explosives




**U.S. Department of Homeland Security**

U.S. Customs and Border Protection

Washington, DC 20229
www.cbp.gov

**CERTIFICATION**

1. I, Millie M. Gleason, hereby certify that I am the Director of the Fines, Penalties and Forfeitures (FPF) Division within the Office of Field Operations in the headquarters office of U.S. Customs and Border Protection (CBP), within the United States Department of Homeland Security (DHS). As part of my duties, I am responsible for developing and overseeing the national CBP FPF program, which includes adjudication of both administrative and judicial actions related to the violations of laws that are referred to headquarters. I am also responsible for providing guidance to FPF offices in the field. Specifically, I am responsible for implementing policy and procedure for all aspects of case processing and for the seized property process, to include management, control and accountability of property. As such, I am familiar with the policies which CBP applies in carrying out its forfeiture program.

2. The personnel assigned to FPF, both at CBP headquarters located in Washington, DC, and in CBP's forty-two FPF offices located across the United States, are responsible for the daily operation of CBP Office of Field Operation's administrative forfeiture program. This work includes the identification of specific assets and all interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of contested matters to U.S. Attorney's Offices across the country for their consideration. Since the beginning of FY 2019 through the date of this certification, CBP's Office of Field Operations has initiated administrative forfeiture actions against more

than 169,848 assets, of which 22,487 are subject to Civil Asset Forfeiture Reform Act of 2000 (CAFRA) requirements.

3. For every CBP administrative forfeiture action governed by CAFRA handled by FPF, FPF is required to send written notice to all interested parties by the deadlines established in 18 U.S.C. § 983(a)(1)(A); to-wit: 60-days for federal seizures and 90-days for adopted seizures (those initially made by a state or local law enforcement agency). 18 U.S.C. § 983(a)(1)(A)(i), (iv); 28 CFR § 8.9(c)(1).

4. As designated by 19 C.F.R. § 162.92, I am the appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including, *inter alia*, endangering the life or physical safety of an individual, or seriously jeopardizing an investigation. 18 U.S.C. §§ 983(a)(1)(B) and (C).

5. On March 13, 2020, President Trump declared a national emergency, effective as of March 1, 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on March 19, 2020, the Acting Secretary of DHS implemented a "broad-based telework strategy" policy, which includes all CBP law enforcement components. Certain states, including Virginia, Maryland and the District of Columbia have also issued "Stay and Home Orders" ordering residents to remain at home, with certain exceptions, including essential work. See e.g., https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-55-Temporary-Stay-at-Home-Order-Due-to-Novel-Coronavirus-(COVID-19).pdf . As a result, all personnel working in CBP headquarters in Washington, DC who process asset forfeiture, and CBP's forty-two offices, are teleworking.

U.S. Customs and Border Protection

**U.S. Department of Homeland Security**

U.S. Customs and Border Protection

Washington, DC 20229
www.cbp.gov

6. As the COVID-19 disease continues to spread, it is becoming increasingly difficult, and soon may be impossible, for CBP FPF to comply with the guidance promulgated by the Centers for Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.

7. Based on the foregoing, I have reason to believe that, at this time, sending notice of pending administrative forfeiture actions which are subject to CAFRA may, in fact, endanger the life or physical safety of CBP personnel, or otherwise jeopardize ongoing CBP investigations. Accordingly, I believe that an extension of time in all such cases is necessary and appropriate to protect the health and safety of CBP personnel responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 8th day of April, 2020 at Washington, DC.

Millie M. Gleason

MILLIE M. GLEASON
Director, Fines, Penalties and Forfeitures

CERTIFICATION

I, Vicki L. Rashid, am a supervisory official in the headquarters office of the Drug Enforcement Administration ("DEA"), as described in 18 U.S.C. Section 983(a)(1)(C).

The personnel assigned to the DEA's asset forfeiture program, both at DEA Headquarters located in Arlington, VA, and in the DEA's field divisions located across the United States, are responsible for the daily operation of DEA's administrative asset forfeiture program. This work includes the identification of specific assets and any potential interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of any contested matters to U.S. Attorney's Offices across the country for their consideration.

For every DEA administrative forfeiture governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), DEA is required to send written notice to all interested parties by the deadlines established in 18 U.S.C. Section 983(a)(1)(A); to-wit: 60-days for federal seizures and 90-days for adopted seizures (those initially made by a state or local law enforcement agency). 18 U.S.C. Section 983(a)(1)(A)(i), (iv); 28 C.F.R. Section 8.9(c)(1).

As designated by 28 C.F.R. Section 8.9(c)(7), I am the appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including *inter alia,* endangering the life or physical safety of an Individual, or seriously jeopardizing an investigation. 18 U.S.C. Sections 983 (a)(1)(B).

As designated by 28 C.F.R. Section 8.9(c)(8), I am also the appropriate official to provide the written certification for a request to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including *inter alia,* endangering the life or physical safety of an Individual, or seriously jeopardizing an investigation. 18 U.S.C. Sections 983 (a)(1)(C).

On March 13, 2020, President Trump declared a national emergency, effective as of March 1, 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on March 15, 2020, the Attorney General implemented a "maximum telework" policy, which includes all DOJ law enforcement components. As a result, virtually all asset forfeiture personnel working in DEA Headquarters in Arlington, VA, and DEA's field division offices are teleworking.

As the COVID-19 disease continues to spread, it is becoming increasingly difficult, and soon may be impossible, for DEA to comply with the guidance

promulgated by the Centers of Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.

Based on the foregoing, I have reason to believe that sending notice of pending administrative forfeiture actions, processing claims, and making referrals at this time may, in fact, endanger the life or physical safety of numerous DEA forfeiture personnel, or otherwise jeopardize ongoing DEA investigations. Accordingly, I believe that a sixty (60) day extension of all noticing deadlines and filing deadlines in these cases is necessary and appropriate to protect the health and safety of DEA personnel who are responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 30th day of March, 2020 at Arlington, VA.

Vicki L. Rashid
Forfeiture Counsel
Associate Chief Counsel
Office of Chief Counsel
Drug Enforcement Administration

CERTIFICATION

I, Stephen J. Jobe, am a supervisory official in the headquarters office of the Federal Bureau of Investigation ("FBI"), as described in 18 U.S.C. Section 983(a)(1)(C)

The personnel assigned to the FBI's asset forfeiture program, both at FBI Headquarters located in Washington, D.C., and in the FBI's fifty-six field divisions located across the United States, are responsible for the daily operation of FBI's administrative forfeiture program. This work includes the identification of specific assets and any potential interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of any contested matters to U.S. Attorney's Offices across the country for their consideration.

For every FBI administrative forfeiture governed by the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), FBI is required to send written notice to all interested parties by the deadlines established in 18 U.S.C. Section 983(a)(1)(A); to-wit: 60-days for federal seizures and 90-days for adopted seizures (those initially made by a state or local law enforcement agency). 18 U.S.C. Section 983(a)(1)(A)(i), (iv); 28 C.F.R. Section 8.9(c)(1).

As designated by 28 C.F.R. Section 8.9(c)(7), I am the appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including *inter alia,* endangering the life or physical safety of an Individual, or seriously jeopardizing an investigation. 18 U.S.C. Sections 983 (a)(1)(B) and (C)

On March 13, 2020, President Trump declared a national emergency, effective as of March 1, 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on March 15, 2020, the Attorney General implemented a "maximum telework" policy, which includes all DOJ law enforcement components. As a result, virtually all asset forfeiture personnel working in FBI Headquarters in Washington, D.C., and FBI's fifty-six field division offices are teleworking.

As the COVID-19 disease continues to spread, it is becoming increasingly difficult, and soon may be impossible, for FBI to comply with the guidance promulgated by the Centers of Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.

Based on the foregoing, I have reason to believe that sending notice of pending administrative forfeiture actions, processing claims, and making referrals at this time may, in fact, endanger the life or physical safety of numerous FBI forfeiture personnel, or otherwise jeopardize ongoing FBI investigations. Accordingly, I believe that a sixty (60) day extension of all noticing deadlines and filing deadlines in these cases is necessary and appropriate to protect the health and safety of FBI personnel who are responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 29th day of March, 2020 at Washington, D.C.

Stephen J. Jobe
Chief, Legal Forfeiture Unit
Office of the General Counsel
Federal Bureau of Investigation



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON, D.C. 20224**

**Criminal Investigation**

2 April 2020

CERTIFICATION

I, Ronald L. Whitsett, hereby certify and attest that I am the Director of the Warrants and Forfeiture (WF) Section in the headquarters office of the Internal Revenue Service, Criminal Investigation (IRS-CI), within the United States Department of the Treasury. As part of my duties, I am responsible for developing and overseeing the national IRS-CI WF program, which includes adjudication of administrative actions and proposed judicial actions related to the violations of laws that are within the jurisdiction of the IRS and referred to headquarters. I am also responsible for providing guidance to IRS-CI field offices throughout the United States. Specifically, I am responsible for implementing policies and procedures for all aspects of the seizure and forfeiture of assets, to include management, control and accountability of property. As such, I am familiar with the policies which IRS-CI applies in carrying out its forfeiture program.

The personnel assigned to WF, both at IRS-CI headquarters located in Washington, DC, and in IRS-CI's twenty-one field offices located throughout the United States, are responsible for the daily operation of IRS-CIs administrative forfeiture program. This work includes the identification of specific forfeitable assets and all interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of contested matters to respective U.S. Attorney's Office for their consideration. Since the beginning of FY 2019 and through the date of this certification, IRS-CIs field offices have initiated administrative forfeiture actions in 241 cases and 156 civil judicial cases that are subject to Civil Asset Forfeiture Reform Act of 2000 (CAFRA) requirements.

For every IRS-CI administrative forfeiture action governed by CAFRA handled by WF, WF is required to send written notice to all interested parties by the deadlines established in 18 U.S.C. § 983(a)(1)(A); to-wit: 60-days for federal seizures and 90-days for adopted seizures (those initially made by a state or local law enforcement agency). 18 U.S.C. § 983(a)(1)(A)(i), (iv); 28 CFR § 8.9(c)(1).

As designated by 28 C.F.R. § 8.9(c)(7), I am the appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including, inter alia, endangering the life or physical safety of an individual, or seriously jeopardizing an investigation. 18 U.S.C. §§ 983(a)(1)(B) and (C).

On 13 March 2020, President Trump declared a national emergency, effective as of 1 March 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on 25 March 2020, IRS Commissioner Charles P. Rettig implemented a “broad-based telework strategy” policy, which includes all IRS-CI law enforcement components. As a result, all personnel working in IRS-CI headquarters in Washington, DC who process asset forfeitures, as well as IRS-CI’s twenty-one field offices, are teleworking.

As the COVID-19 disease continues to spread, it is becoming increasingly difficult, and soon may be impossible, for IRS-CI WF to comply with the guidance promulgated by the Centers for Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.

Based on the foregoing, I have reason to believe that, at this time, sending notice of pending administrative forfeiture actions which are subject to CAFRA may, in fact, endanger the life or physical safety of IRS-CI personnel, or otherwise jeopardize ongoing IRS-CI investigations. Accordingly, I believe that an extension of time in all such cases is necessary and appropriate to protect the health and safety of IRS-CI personnel responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 2nd day of April 2020 at Washington, DC.

Sincerely,

Troy A. Burns for Acting

Ronald L. Whitsett
Director, Warrants and Forfeiture
IRS-CI

**DECLARATION**

1. I, Scott Cochran, hereby certify that I am the Assistant Special Agent in Charge of Criminal Investigative Division (CID) within the Office of Investigations in the headquarters office of U.S. Secret Service (USSS), within the United States Department of Homeland Security (DHS). As part of my duties, I am responsible for overseeing the USSS Asset Forfeiture Branch (AFB), which includes supervision of both administrative and judicial forfeiture actions. AFB is also responsible for providing guidance to investigative offices in the field on asset forfeiture matters. Specifically, I am responsible for implementing policy and procedure for all aspects of case processing and for the seized property process, to include management, control, and accountability of such property. As such, I am familiar with the policies that USSS applies in carrying out its forfeiture program.

2. The personnel assigned to AFB are responsible for the daily operation of the USSS administrative forfeiture program. This work includes the identification of specific assets and all interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of contested matters to U.S. Attorney's Offices across the country for their consideration. Since the beginning of FY 2019 through the date of this declaration, USSS AFB has initiated at least 147 seizures for administrative forfeiture that are subject to Civil Asset Forfeiture Reform Act of 2000 (CAFRA) requirements.

3. For every USSS administrative forfeiture action governed by CAFRA handled by AFB, AFB is required to send written notice to all interested parties by the deadlines established in 18 U.S.C. § 983(a)(1)(A); to wit: 60 days for federal seizures and 90 days for adopted seizures

(those initially made by a state or local law enforcement agency). 18 U.S.C. § 983(a)(1)(A)(i), (iv); 28 CFR § 8.9(c)(1).

4. As set forth in 28 C.F.R. § 8.9(c)(7), I am the designated appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including, *inter alia*, endangering the life or physical safety of an individual, or seriously jeopardizing an investigation. 18 U.S.C. §§ 983(a)(1)(B) and (C).

5. On March 13, 2020, President Trump declared a national emergency, effective as of March 1, 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on March 19, 2020, the Acting Secretary of DHS implemented a "broad-based telework strategy" policy, which includes the USSS AFB. As a result, all personnel working in AFB in Washington, DC who process asset forfeiture are teleworking. Contractors who typically work in AFB are not currently able to telework as AFB is in the process of providing necessary telework-capable equipment to its contractors.

6. As the COVID-19 disease continues to spread, it is not possible for USSS AFB to comply with the guidance promulgated by the Centers for Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease while still processing administrative forfeitures pursuant to its regular procedures.

7. Based on the foregoing, I have reason to believe that, at this time, sending notice of pending administrative forfeiture actions that are subject to CAFRA may endanger the life or physical safety of USSS AFB personnel. Accordingly, I believe that an extension of time in all

such cases is necessary and appropriate to protect the health and safety of USSS personnel responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 2nd day of April, 2020 at Washington, DC.

Scott Cochran

Scott Cochran
Assistant Special Agent in Charge
Criminal Investigative Division / Asset Forfeiture Branch
United States Secret Service




**U.S. Department of Homeland Security**

U.S. Customs and Border Protection

Washington, DC 20229
www.cbp.gov

## CERTIFICATION

1. I, Clarence Catchings, hereby certify that I am the Assistant Chief of the Asset Forfeiture Program of the Finance Division within the Office of U.S. Border Patrol (USBP) in the headquarters office of U.S. Customs and Border Protection (CBP), within the United States Department of Homeland Security (DHS). As part of my duties, I am responsible for developing and overseeing the national USBP Asset Forfeiture program, which includes adjudication of both administrative and judicial actions related to the violations of laws that are referred to headquarters. I am also responsible for providing guidance to USBP offices in the field. Specifically, I am responsible for implementing policy and procedure for all aspects of case processing and for the seized property process, to include management, control and accountability of property. As such, I am familiar with the policies which CBP applies in carrying out its forfeiture program.

2. The personnel assigned to USBP, both at CBP headquarters located in Washington, DC, and in USBP's twenty sectors which are responsible for processing fines, penalties and forfeitures in the field, are responsible for the daily operation of USBP's administrative forfeiture program. This work includes the identification of specific assets and all interested parties; the receipt and processing of mail, including a large volume of time-sensitive documents; complying with the statutory deadline requirements for providing notice to potential claimants and petitioners; and referrals of contested matters to U.S. Attorney's Offices across the country for their consideration. Since the beginning of FY 2019 through FY20 (to date) USBP has initiated administrative forfeiture actions against more than 8,760

assets, of which 7,563 are subject to Civil Asset Forfeiture Reform Act of 2000 (CAFRA) requirements.

3. For every USBP administrative forfeiture action governed by CAFRA, USBP is required to send written notice to all interested parties by the deadlines established in 18 U.S.C. § 983(a)(1)(A); to-wit: 60-days for federal seizures and 90-days for adopted seizures (those initially made by a state or local law enforcement agency). 18 U.S.C. § 983(a)(1)(A)(i), (iv); 28 CFR § 8.9(c)(1).

4. As designated by 19 C.F.R. § 162.92, I am the appropriate official to extend the period for sending personal written notice in a particular case, if there is reason to believe that notice may have an adverse result, including, *inter alia*, endangering the life or physical safety of an individual, or seriously jeopardizing an investigation. 18 U.S.C. §§ 983(a)(1)(B) and (C).

5. On March 13, 2020, President Trump declared a national emergency, effective as of March 1, 2020, due to the Novel Coronavirus Disease (COVID-19) pandemic. To allow federal employees to engage in social distancing to slow the spread of the virus, on March 19, 2020, the Acting Secretary of DHS implemented a "broad-based telework strategy" policy, which includes all CBP law enforcement components. Certain states, including Virginia, Maryland and the District of Columbia have also issued "Stay and Home Orders" ordering residents to remain at home, with certain exceptions, including essential work. *See e.g.*, https://www.governor.virginia.gov/media/governorvirginiagov/executive-actions/EO-55-Temporary-Stay-at-Home-Order-Due-to-Novel-Coronavirus-(COVID-19).pdf. As a result, all personnel working in CBP headquarters in Washington, DC who process asset forfeiture for USBP, and several of USBP's twenty sectors are teleworking.




**U.S. Department of Homeland Security**

U.S. Customs and Border Protection

Washington, DC 20229
www.cbp.gov

6. As the COVID-19 disease continues to spread, it is becoming increasingly difficult, and soon may be impossible, for CBP to comply with the guidance promulgated by the Centers for Disease Control and Prevention and other public health authorities regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.

7. Based on the foregoing, I have reason to believe that, at this time, sending notice of pending administrative forfeiture actions which are subject to CAFRA may, in fact, endanger the life or physical safety of USBP personnel, or otherwise jeopardize ongoing CBP investigations. Accordingly, I believe that an extension of time in all such cases is necessary and appropriate to protect the health and safety of USBP personnel responsible for the daily processing of claims, petitions, referrals, and correspondence, and serves the best interests of both the public and the United States of America.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 8th day of April, 2020 at Washington, DC.

CLARENCE T CATCHINGS II Digitally signed by CLARENCE T CATCHINGS II Date: 2020.04.08 15:21:25 -04'00'

CLARENCE T. CATCHINGS II
Assistant Chief, Finance Division